ERNESTO REYES ESTRELLA, Plaintiff and Appellee, v. LUCIANO HERNÁNDEZ, Defendant and Appellant.

No. R-68-203.    Decided February 6, 1970.

*Harry B. Llenza* for appellant. *Pedro N. Ortiz* for appellee.

PER CURIAM: The judgment whose review is sought, orders the discontinuance of "the servitude . . . with regard to the rainwaters which pass over [a] pipe and which run and come forth from defendant's buildings, flowing onto his property and to the sewage leakage which flow from the septic tanks when they fill up; and orders the dismissal of the complaint with regard to plaintiff's request concerning the rainwaters which run through the pipes existent in defendant's boundary with Highway No. 3, '65 de Infantería.'"

According to the findings of fact[1] and to the evidence submitted, the physical position of plaintiff-appellee's

---

[1] "1. Plaintiff is the owner of a tenement of land of 5 cuerdas, in the Ward Jiménez of Río Grande, which is bounded on the East, by a parcel of land owned by defendant. Both tenements are bounded on the South, by State Highway No. 3, '65 de Infantería.'

"2. The '65 de Infantería' highway is located on a level higher than plaintiff's and defendant's properties. In turn, plaintiff's estate is lower than defendant's property, receiving both the natural rainfall from the highway. The waters run to plaintiff's tenement through defendant's property.

"3. When the construction of the '65 de Infantería' Highway was finished, the Department of Public Works built a ditch or trench on its boundary with defendant's property. The waters which flowed through that ditch overflowed in part to the West and on another part to the East. This is so despite the fact that the highway has on that part a small grade of 1% toward the East, because the Department of Public Works of Puerto Rico, in order to protect the slope of the highway, provided that the waters of that ditch flow in both directions, thus those which flow to the West flow on plaintiff's property, which is the lower tenement. The expert Engineer, Rafael A. Domenech, explained this situation in a clear and convincing manner.

"4. Defendant, after having leveled the front of his property, which has access to '65 de Infantería' Highway, requested the proper permit from the Planning Board to construct a gasoline station. It was granted on the condition that he placed a pipe of 24″ in diameter in the aforementioned

property as lower tenement is the reason for receiving the rainwaters which flow from State Highway No. 3 and other waters which pour from certain buildings constructed by defendant-appellant on his property, which flow down onto plaintiff's property. As to the rainwaters which flow by themselves from the highway, it is clear that the plaintiff's property is bound to receive them—those which flow through the ditch, as well as those which run over the pipe and enter

---

ditch. The placing of this pipe did not increase the volume of rainwaters which flowed through the ditch towards plaintiff's property, on the contrary, it decreased it. The reason is obvious. The highway on the center has an elevation because it has a 2% slope on both sides. Before the pipe was placed, the waters from the Northern side of the elevation of the highway flowed to the ditch and went through it to plaintiff's property. Now, with the pipe placed in the ditch, those same waters flow over the pipe overflowing towards defendant's property. Thus, the only waters that run through the pipe are those it collects before getting to the front of the station.

"5. In addition, in that area, all along the Southern part of the '65 de Infantería,' there is a mountain range from where large amounts of water flow during the rainy seasons toward the North, that is, towards '65 de Infantería.' When they get here they go through 3 sewers, going through a property owned by the Guzmán family, located to the West of plaintiff's property. Those waters continue toward plaintiff's property, where they empty because it is the lower tenement, and thus, the inferior.

"6. Plaintiff's witnesses themselves accepted that plaintiff's property, before and after the highway was constructed, has always been damp and lower than defendant's. The lowest part of plaintiff's property is located near the boundary with defendant's property. There is where the waters stagnate. The constant passage and the presence of plaintiff's own cattle in that place forms a mudhole which causes part of the pestilence of which plaintiff complains.

"7. Defendant, on his property and at a distance of 40 feet from plaintiff's boundary, constructed two septic tanks for the gasoline station. Later, he constructed two more for the restaurant at about 80 feet from said boundary. There the ground does not leak, since it is compact. His gasoline station does not offer car wash service. Each one of the septic tanks has a concrete cover, and although the one built for the restaurant has filled up frequently and on countless occasions during each year, it has never overflowed through said cover. When the tanks fill up, the water does not flush and then the toilets overflow on the floor of the room where they are installed. The only times when defendant has ordered the cleaning of the tanks has been when plaintiff has complained, except on recent months when defendant has done it more frequently and without having been re-

defendant's property,. from where they flow towards plaintiff's property—since they are waters which, naturally, descend from higher tenements without it being possible to state that defendant-appellant's action in placing a pipe in the ditch which separates the highway from both tenements to give access to his property, constitutes an aggravation of the servitude, because that action does not increase the volume of waters received. Section 488 of the Civil Code, 31 L.P.R.A. § 1711; *cf. Ramos* v. *Quiñones,* 55 P.R.R. 891 (1940); *González* v. *Calderón,* 51 P.R.R. 148 (1937). IV Manresa, *Comentarios al Código Civil Español* 624 *et seq.* (5th ed. 1931); III Puig Brutau, *Fundamentos de Derecho Civil* 420–421. As to the remaining waters coming from those used in the automobile service station and the restaurant built

---

quired to do so.

"8. The court, by the result of the evidence, has been convinced that when those septic tanks fill up, on some occasions they have leaked toward plaintiff's property. To this respect we give credit to the testimony of Esteban Berríos Morales, Inspector in the Department of Agriculture, and that of Carmelo Rivera Esquilín, Health Inspector I, of Río Grande, who are impartial persons and who examined the place. The above-mentioned leakages dampen plaintiff's property even more, increasing the mud and the natural pestilence caused by the presence and the trampling of the cattle at said place. We must point out that, notwithstanding how compact the ground in that area is, when defendant leveled his tenement and specifically at the place where the buildings stand, he made it feasible for leakages to occur when the tanks filled up through those higher ground layers which were laid to the level ground or removed when the former were constructed. Plaintiff did not prove any damages sustained."

And in the conclusions of law, findings of fact are included:

"Clearly, in this case the topography of defendant's land changed when he leveled his property at the side where it adjoins highway No. 3 and when he constructed a gasoline station and a restaurant.

". . . . . . . .

"As to the waters which flow through the ditch built by the Government upon the construction of the above-mentioned highway, the situation is different. The same is on Government land and what defendant did was to cover it as he was required by the Government. Here the state is not a party either. There is nothing in the evidence to show that waters, other than rainwater, run through that ditch, thus it does not disturb or. prejudice plaintiff."

by defendant-appellant, called "sewage," Manresa, *op. cit.* at p. 626, it is likewise clear that their detour towards plaintiff's tenement is brought about by man's intervention,[2] and the former is not obliged to receive them, in the absence of a duly established servitude. In this last situation the tenements are no longer in their original condition and the topographical variation excludes the so-called natural servitude of waters.

As regards the leakings of the septic tanks, it is important to say that it is not strictly a question of the establishment of a servitude.[3] This evidence was presented to support the cause of action for damages which was dismissed.

The judgment rendered by the Superior Court, San Juan Part, on June 19, 1968 will be modified to restrict the pronouncement about the discontinuance of the servitude only

---

[2] To construct the buildings, defendant did some levelling work on his property. Although appellant repeatedly insisted on the fact that there is no evidence to that effect, an examination of the record overcomes this statement. (Tr. Ev. pp. 37, 42, 98.)

2 Borrell y Soler, *Derecho Civil Español* 482, states that this servitude is of a rustic character and refers mainly to "the waters which accidentally flow as a result of heavy rains, and affirms it when he says that with them the owner of the lower tenement is obliged to receive the earth and stones which they carry with them."

[3] All that the evidence shows is that when the septic tanks fill up they do not overflow through their covers, but by the plumbing and some small leakings that, because of the situation of the tenements, flow as far as plaintiff's. This unfrequent situation is corrected by defendant by means of a regular cleaning of the tanks.

At the close of the presentation of the evidence at the hearing held before the trial court, the judge stated:

"The case is completely clear and simple. There is no evidence at all here worthy of credit by the court, showing that defendant has sought to impose a servitude of waters on the party, on plaintiff's tenement. Likewise, there is no evidence to the effect that there is any servitude, there being no evidence as to damages; *specifically, there is evidence of a leaking which may have been of water*, that is, from the gasoline station, by only one testimony to which the court, since it is one only, understands that the generalization of when *those tanks have been filled up* is not applicable, *and that would not be servitude either*, but the natural situation of the land."

to the remaining waters coming from the buildings erected on defendant-appellant's property, and as thus modified, it will be affirmed.

Mr. Chief Justice Negrón Fernández and Mr. Justice Hernández Matos did not participate herein.